IN THE UNITED STATES DISTRICT COURT
WESTERN DIVISION
FORT SMITH DISTRICT

JANES, INC. and
LOREN JANES                                                                                    PLAINTIFFS

vs.                                      Case No.   2:13-cv-02049-PKH

WILLIAM J. MOATES; SUN AMERICA ASSET
MANAGEMENT CORP. f/k/a AIG SUNAMERICA
ASSET MGT. CORP. and SUNAMERICA CAPITAL
SERVICES, INC. f/k/a AIG SUNAMERICA
CAPITAL SERVICES, INC.                                                                     DEFENDANTS

PARTIAL RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND
MOTION FOR EXTENSION OF TIME TO FULLY RESPOND

Comes now the Plaintiffs, Loren Janes and Janes, Inc., by and through their attorney, Joe D. Byars, Jr., of Byars, Hickey & Hall, PLLC, and files this partial response in opposition to Defendant's Motion to Dismiss (Doc. 31, 32) and motion for extension of time to fully respond, and in support thereof, states and alleges as follows:

1.       Plaintiffs deny that Separate Defendants, SunAmerica Asset Management Corp. f/k/a AIG SunAmerica Asset Mgt. Corp. and SunAmerica Capital Services, Inc. f/k/a AIG SunAmerica Capital Services, Inc., are entitled to dismissal.

2.       The Amended Complaint (Doc. 21) filed herein on June 12, 2013, accurately and sufficiently sets forth causes of action against Separate Defendants, identifying the Defendants among the confusing array of entities which may be affiliates of AIG, but no longer using AIG in their names.

Procedural Status

      3.      On July 29, 2013, Defendants, SunAmerica Asset Management Corp. f/k/a AIG SunAmerica Asset Mgt. Corp. and SunAmerica Capital Services, Inc. f/k/a AIG SunAmerica Capital Services, Inc. (Sometimes collectively referenced herein as "SunAmerica"), filed their Motion to Dismiss, purportedly under Rule 12(b)(6). While the Defendants designated their motion as a motion to dismiss, the reality is that Defendants have filed a motion for summary judgment by requesting the court to consider documents attached in support of the motion, including two unauthenticated hearsay documents attached as Exhibits "A" and "B" to the Defendants' motion. Exhibit "A" to Defendants' motion is represented to be a "FINRA broker check" showing William Jackson Moates, Jr., as "not registered" with FINRA, yet shows a "registration history" with American General Securities, Incorporated from October 2002 through October of 2008, and "Sage Point Financial, Inc." from the time frame of October of 2008 through February of 2009. This report also reflects "employment dates" for William Moates apparently reflecting that Moates was an employee various entities affiliated or related to AIG (American International Group), such as AIG Financial Advisors, Inc.; AIG American General Life Insurance Company; and American General Securities, Incorporated. See Defendants' Exhibit A (document 32-1, Page ID# 213). The Defendants also rely upon another unauthenticated hearsay document labeled Exhibit "B" (document 32-2, Page ID# 220) which purports to be a "producer license report" reflecting various associations of William Moates, including American General Insurance Agency, Inc., and American General Life Insurance Company, among others.

      The Defendants would have this Court consider the documents, and assume as true the statements made by the Defendants as to the significance of the attached documents. Accordingly,

these documents are clearly matters "outside the pleadings" which must be necessary for the Court to consider in passing on the motion. "Under Rule 12(b) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim upon which relief can be granted must be treated as a summary judgment when matters outside the pleadings are presented and not excluded by the trial court." Fed.R.Civ.P. 12(b); e.g. *Mazaleski v. Treusdell*, 562 F.2d 701 (D.C. Cir. 1977); *Abrahamson v. Mitchell*, 459 F.2d 955 (8th Cir. 1972). Thus, since the Defendants have filed documents in support of their motion to dismiss, the district court must treat the motion as one for summary judgment unless it decides to exclude the documents in considering the motion. See, for example, *Dayco Corp. v. Goodyear Tire and Rubber Co.*, 523 F.2d 389 (6th Cir. 1975). *Woods v. Dugan*, 660 F.2d 379, 380 (8th Cir. 1981). In this regard, the Plaintiffs request the Court to either exclude the documents attached to Defendants' motion and rule upon Defendants' motion to dismiss without such supporting documentation, or alternatively, to treat the motion as a motion for summary judgment and provide the Plaintiffs with a reasonable period of time in which to conduct sufficient discovery which would enable the Plaintiffs to fully respond to the motion. "When a motion to dismiss is treated as a motion for summary judgment, Rule 12 provides for its disposition pursuant to Rule 56." Fed.R.Civ.P. 12(b). Rule 12 further provides that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.*

4. It is clear that a trial court must give the parties an adequate amount of time to conduct discovery before ruling on a motion for summary judgment. Specifically, "Rule 56(f) allows a party opposing summary judgment to seek a continuance and postpone a summary judgment decision until adequate discovery has been completed. When seeking such a continuance, the party

opposing summary judgment must file an affidavit with the trial court to show what specific facts further discovery might unveil." *Dulany v. Carnahan*, 132 F.3d 1234, 1238 (8th Cir. 1997).

     5.     Attached is an affidavit of Loren Janes, demonstrating the need for the Plaintiff to conduct discovery in order to ascertain the relationships between Loren Janes, Janes, Inc., William J. Moates, and Defendants, SunAmerica Asset Management Corp. f/k/a AIG SunAmerica Asset Mgt. Corp. and SunAmerica Capital Services, Inc. f/k/a AIG SunAmerica Capital Services, Inc., and the entities identified in the Defendants' documents, which appear to be entities related to, and on information and belief, are related to AIG SunAmerica Capital Services, Inc. Attached to the affidavit of Loren Janes are copies of proposed interrogatories and document requests which Plaintiffs desire to serve upon the Defendants and Mr. Moates in order to ascertain the relationships between Separate Defendants SunAmerica Asset Management Corp. f/k/a AIG SunAmerica Asset Mgt. Corp. and SunAmerica Capital Services, Inc. f/k/a AIG SunAmerica Capital Services, Inc. and the parties identified as "employers" of William J. Moates, including American General Life Insurance Company (see Defendant's Exhibit "B"), and American General Securities, Incorporated. As stated by Loren Janes in his affidavit, Mr. Janes received periodic statements with respect to his Sun America account which listed the "Representative Name" as William Moates and which listed William J. Moates, Jr., as the financial representative on statements specific to the 401(k) account number 93149322, and which also reference "AIG Financial Advisors, Inc." as the "financial representative." (See Janes Affidavit, Exhibit "A", P. 3-4) As late as May 31, 2012, SunAmerica issued statements to Loren Janes, or Janes, Inc., holding out "William J. Moates" as the "Financial Representative," with apparent authority to act for SunAmerica. (See Janes' affidavit, Ex. "C"). Based upon the facts stated in Mr. Janes' affidavit, it appears clear that there has been, and <u>may</u> have

been, at the relevant time periods, substantial relationships between AIG Financial Advisors, Inc., William Moates, AIG Sun America, Capital Services, Inc., and/or other AIG affiliates utilizing the name "SunAmerica." See also, Janes Affidavit, Exhibit A. The Plaintiffs should have an adequate opportunity to conduct discovery into the "shell game" apparently practiced by AIG, and SunAmerica. The names of the entities are confusingly similar, and as such, discovery is necessary to determine the true relationships between the parties.

## Argument

6.  Fundamental to the Court's determination on a motion to dismiss is that the allegations asserted by the Plaintiffs are accepted as true. It appears that the Defendant has simply chosen to ignore multiple allegations set out in the Plaintiff's complaint, including the facts stated in paragraphs 10 through 32 of the complaint, in which William J. Moates is described as acting "under the control of Defendants SAAMCo, and/or SunAmerica Capital, and that Separate Defendants permitted and facilitated in the transfer of Mr. Janes' account without taking reasonable precautions to obtain and/ or verify the authority of the person causing the transfer of funds.

Pursuant to paragraphs 11 through 18 of the complaint, Moates represented to Janes that the amount of $85,600.00 of Janes' funds would be deposited into a "SunAmerica" account (Account No. 9314932), yet Moates, on behalf of and acting for and/or with the assistance of the Defendants, SunAmerica, caused the funds to be deposited with HR Administration, Inc., knowing (or they should have known) HR Administration, Inc., was owned and/or operated and/or controlled by Robert Hague Rogers, who was known to be untrustworthy and leaving the deposit at a very high degree of risk of loss.

In paragraph 15 of the Amended Complaint, Plaintiffs allege that the Separate Defendants knew or should have known that the entire account balance of $157,078.30 was withdrawn from the 401(k) account held by Janes, Inc., "yet failed to notify Janes, Inc., and/or Loren Janes of the complete withdrawal of the funds."

Moreover, paragraph 15 of the complaint demonstrates that the actions of Moates and Separate Defendants, SAAMCo. and SunAmerica Capital were performed "without the knowledge or consent of Janes, Inc., and/or Loren Janes" and that such actions were concealed from the Plaintiffs. These are the specific acts of conduct which constitute the acts, misrepresentations and omissions which Plaintiffs contend to constitute a manipulative and/or deceptive device in violation of §10(b) of the Securities Exchange Act.

7.  Sun America has stated four specific arguments as to why the Plaintiffs allegations fail to state a claim, which will be addressed in turn:

1) **Negligence.** Defendants first assert that Plaintiffs' Amended Complaint fails to state a claim for negligence because there is no support under Arkansas common law for the notion that a broker-dealer or the issuer or "portfolio manager" of a financial account owes a duty to its account owners to verify the authority of a person transferring funds or to obtain consent to do so on behalf of the account owner. Basic concepts of "duty" under common law negligence certainly support the common sense notion that a broker-dealer or issuer of a financial account <u>does</u> have a duty to verify the identity and authority of a person draining over $150,000.00 from an account. "Duty is a concept which arises out of the recognition that relations between individuals may impose upon one a legal obligation for another." *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997), citing *Prosser, Handbook on the Law of Torts*, §42 at 244 (4th Ed. 1971). In the commercial setting,

it is often stated that a bank or financial company must act in a "commercially reasonable manner," or must adhere to reasonable commercial standards in dealing with an account. See, for example, *First Bank & Trust of Jonesboro v. Vaccari*, 288 Ark. 233, 702 S.W.2d 867 (1986).

In *First Bank*, *supra*, the Arkansas Supreme Court cited, with approval, the case of *Aetna Casualty & Surety Co. V. Hepler State Bank*, 6 Kan.App.2d 543, 630 P.2d 721 (1981), where the court actually held that as a *matter of law*, it is commercially *unreasonable* for a bank to accept for deposit in an individual account a check made payable to a corporation without first ascertaining, or at least making an inquiry as to the authority of the depositor/endorser. *First Bank*, 288 Ark. At 236; 703 S.W.2d at 869. By close analogy, a financial organization providing and holding 401(k) accounts owe a similar duty to make inquiry as to the authority of a person closing out or transferring the entire balance of an account with a value in excess of $150,000.00. It has been pled that there is a relationship between Plaintiffs and Defendants whereby Janes and Janes, Inc. invested in securities issued by SAAMCo and/or SunAmerica Capital (Amended Complaint, ¶11A) as a 401(k) account and/or mutual fund account. Given the relationship of the parties, it is axiomatic that a duty is owed by virtue of the relationship between the parties. Common and accepted commercial standards require those in the position of Defendants to make some effort to verify the identity and authority of a person transferring an amount in excess of $150,000.00 from an account – at least under the circumstances in existence in this case. Accordingly, Plaintiffs have sufficiently pled a cause of action for negligence; or should be given the opportunity to re-plead, as such would not be "futile." It is essentially undisputed that a relationship between Plaintiffs and Separate Defendants does exist. The nature of the relationship alleged creates legal duties.

    2)  **Conversion.** Defendants next assert that Plaintiffs have failed to state a claim for conversion. Defendants take a strained reading of the Complaint in order to "limit" or attempt to limit the true allegations. Clearly with respect to the account balance of $157,078.30, the Plaintiffs have alleged that such sum was on deposit or held in an account with the Defendants, and that the Defendants "SAAMCo and SunAmerica Capital knew or should have known that the Plaintiffs' investment needs and objectives were to hold the funds in question in the existing 401(k) account which Janes, Inc. had with SunAmerica, which funds were not to be transferred or sold without the express written consent of the Plaintiffs." (Amended Complaint, ¶ 14). It was specifically alleged that the funds were to be held in accordance with the terms of the account issued by Defendants, but that "with the cooperation and assistance of SAAMCo and SunAmerica Capital" (Amended Complaint ¶14), and further, that "SAAMCo and SunAmerica Capital permitted and facilitated the transfer of the proceeds of the account without taking reasonable precautions under the circumstances to obtain and/or verify the identity and authority of the person causing the transfer of the funds, which was done without the knowledge or consent of [Plaintiffs]" (Amended Complaint ¶16). At ¶22 it is further alleged that Defendants "and each of them, wrongfully and fraudulently assumed control over the securities in Plaintiffs' account with SunAmerica, and wrongfully and without Plaintiffs' knowledge . . . transferred Plaintiffs' account." (Amended Complaint ¶22). Clearly there are specific and sufficient allegations to support a claim for conversion against Separate Defendants.

  The "dominion" over the account comes from the nature of the relationship and that Defendants <u>must</u> have participated in the transfer of the funds. After all, the Defendants issued the "Redemption Check" in te amount of $157,078.30. The problem for the Defendants is that the

transfer was never authorized by the Plaintiffs. Defendants participation in the conversion creates liability. Accordingly, Defendants motion to dismiss Plaintiffs' claim for conversion should be denied; or alternatively, Plaintiff should be given the opportunity to re-plead, as it has not been shown that the same would be "futile."

3) **Respondeat Superior.** The Plaintiffs have alleged certain facts based upon their knowledge and belief. As seen from the Affidavit of Loren Janes, and particularly the exhibits attached thereto, William Moates is identified as the "representative" on multiple statements issued by SunAmerica to Janes Inc. over a period of multiple years – even as late as May 31, 2012. (Ex. C, Affidavit of Loren Janes.) As explained in the Affidavit of Mr. Janes, discovery is needed to allow for further inquiry and investigation as to the relationship between William Moates and the SunAmerica Defendants. While after discovery it may be determined William Moates was not an authorized representative or employee of the Separate Defendants, it is too early to summarily dismiss the claims on this basis. It is apparent that the Defendants permitted or continued to hold Mr. Moates out as a "Financial Representative" on statements issued by SunAmerica through at least May 31, 2012. (Ex. C, Affidavit of Loren Janes.)

4) **Securities Laws Violations.** The Defendants argue that Plaintiffs have failed to state a claim under the securities laws, including Section 10(b) of the Security and Exchange Act of 1934 and Rule 10-b-5. In support, Defendants first claim that Plaintiffs have failed to sufficiently allege a misrepresentation or omission "*in connection with the purchase or sale of a security.*" Once again, the Defendants have focused on one part of the Complaint in an effort to establish a straw man to knock down. The Complaint against Defendants is not limited to the misdirection of the $85,600.00 check, but also the fraudulent transfer and withdrawal of the entire balance of the 401(k)

account which had been held by SunAmerica. Nevertheless, in addressing the argument concerning the "check," the Amended Complaint sufficiently alleges a cause of action.

Defendants rely on the case of *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731 (1975) (and a 7th Circuit Case citing *Blue Chip Stamps*) to argue that since the Plaintiff did not actually obtain an additional contribution to his SunAmerica 401(k) account or mutual fund, then Plaintiff cannot prove a fraud "in connection with the purchase or sale of a security." (Defendants' Brief. Pg. 9-11). This argument is misplaced. In *Blue Chip*, the Supreme Court held that the Securities Exchange "Act does not protect a person who did not actually buy securities, but who might have done so had the seller told the truth." *Wharf Holdings, Ltd. v. United Intern. Holdings, Inc.*, 532 U.S. 588, 594, 121 S.Ct. 1776 (2001) citing *Blue Chip Stamps.* Our case is different, because the $85,600.00 check was, in fact, used to purchase a security. In *Blue Chip*, the Plaintiff argued that the Defendant intentionally prepared a pessimistic prospectus to discourage the purchase of securities, so that the securities could be sold to the public later at a higher price. No securities were purchased. In our case, however, Moates did represent to Plaintiff, Janes, Inc., that a contribution to the existing security account issued by SunAmerica would be purchased and a <u>different</u> security was purchased instead. The Supreme Court in *Wharf*, distinguishes *Blue Chip Stamps*, and presents a situation closer to the facts at hand. In *Wharf*, the question was whether a company which sold an option to buy stock while secretly intending to never honor the option violates Section 10(b) of the Securities and Exchange Act. The Supreme Court concluded that such conduct <u>did</u>. Furthermore, it is clear from such case that a "security" includes both "any . . . option . . . on <u>any</u> security" and "any . . . right to . . . purchase" stock. In this case, it is alleged that Moates, while acting for SunAmerica, sold to Janes, Inc. an "option" to purchase a further interest in the

existing account, but had the secret intention to misdirect the funds, and not honor the "option." In *Wharf*, as in this case, the agreement to purchase additional shares was an oral agreement. In *Wharf*, the court recognized that the Plaintiff, United was not a "potential buyer, because by providing Wharf with its service, it actually bought the option that Wharf sold." Here, it is absolutely true that Janes Inc. actually paid $85,600.00 to purchase what was offered by Moates. It is not a case where Janes, Inc. is alleging that it "would have" or "might have" purchased a security had the seller told the truth. As noted in *Wharf*, "oral contracts for the sale of securities are sufficiently common that the Uniform Commercial Code and statutes of frauds in <u>every state</u> now consider them enforceable." *Wharf*, 532 U.S. at 595.

  Another case similar to the facts at hand is *SEC v. Zandford*, 535 U.S. 813, 122 S.Ct. 1899 (2002), where a securities broker misappropriated the proceeds from the sale of a customer's securities was found to be a fraud "in connection with the purchase or sale of any security" in violation of §10(b) of the Act. "In its role enforcing the Act, the SEC has consistently adopted a broad reading of the phrase 'in connection with the purchase or sale of any security.' It has maintained that a broker who accepts payment for securities that he never intends to deliver, or who sells customer securities with intent to misappropriate the proceeds, violates §10(b) and Rule 10b-5." *Zandford*, 535 U.S. at 819. See also *Grippo v. Perazzo*, 357 F.3d 1218 (11th Cir. 2004), where the court concluded that the plaintiff adequately pled "in connection with the purchase or sale of any security even though he failed to identify any particular security purchased, because [the Defendant] accepted and deposited the [Plaintiff's] monies as payment for securities." The same situation is presented here, as alleged in Plaintiff's Amended Complaint. *Grippo v. Perazzo*, 357 F.3d 1218,

1224 (11th Circ. 2004). See also *Schnorr v. Schubert*, 2005 WL 2019878 (W.D. Okl. 2005), discussing *SEC v. Zandford* and *Blue Chip Stamps, supra.*

Defendants also claim that the transfer (complete withdrawal) from the SunAmerica account to another account "was not done in connection with the purchase or sale of a security," but the Defendants cite no case law to support the argument. The statute cited by Defendants, 15 U.S.C. § 78c(a)(10) is of no help either. Plaintiffs reference the case of *Colbert & Winstead, PC 401(k) Plan v. AIG Financial Advisors, Inc.,* 2008 WL 2704367 (M.D. Tenn 2008), in which the Court found that Defendant's motion to dismiss state and federal securities claims related to a 401(k) account which was essentially stolen by a rogue agent would <u>not</u> be dismissed. The argument that a 401(k) account is not a "security," but is admittedly composed of securities is a unique argument which apparently has not been addressed directly in a published case – particularly within the Eighth Circuit. However, such argument makes little sense. When the Court examines 15 U.S.C. §78(c)(a)(10), it will note that included in the description of a "security" is a ". . . group or index of securities" – which is essentially how the Defendants describe the account, to wit: "Although a 401(k) account *may* contain securities, they do not have to . . ." (Def. Br. Pg. 11). The affidavit of Loren Janes, attached hereto, includes statements from SunAmerica which clearly list a number of securities accounts, accordingly, there is evidence that the 401(k) account in this case <u>does</u> include securities.

The "who, what, when, and how" are simple in this case, and are alleged with specificity in paragraphs 10-22 of the Amended Complaint. There are two basic transactions, the specifics of which have been identified. The details of the transactions, including the extent to which representatives of Defendants participated with Moates in transferring the 401(k) account are still unknown to Plaintiffs, which is the reason why time is needed to conduct discovery.

Plaintiff urges the Court to examine *Zandford*, and cases which rely upon such Supreme Court Case. Plaintiff respectfully submits that *Zandford* supports the notion that Plaintiff's claims <u>do</u> fall within the prohibition of 10(b) of the Act. Clearly, the circumstances pled by the Plaintiff in this case are sufficient to meet the element of a fraud "in connection with the purchase or sale of a security," for the reasons discussed above.

5) **Agency under Arkansas Law.** As mentioned above, Plaintiffs have alleged certain facts based upon the limited knowledge Plaintiffs now have. The Affidavit of Loren Janes includes attachments referencing William Moates as the "representative" on statements issued by SunAmerica as late as May 31, 2012. These were submitted by SunAmerica repeatedly, and based upon the Affidavit of Loren Janes, one may reasonably conclude that William Moates was "held out" by Defendants as having a representative capacity. Plaintiffs respectfully submit that they have alleged sufficient facts to establish agency, or at least enough to fairly put the Defendants on notice of the claims asserted by Plaintiffs. In this regard, Plaintiffs need time to engage in discovery to ascertain the extent of the relationship between Moates and the other Defendants and when and how all the Defendants communicated their relationship status to Plaintiffs.

Accordingly, in the event this Court does not enter an order denying Defendant's motion to dismiss and/or motion for summary judgment, Plaintiff respectfully requests an order permitting the parties to engage in discovery for a reasonable period of time such that the Plaintiff may fully respond to Defendant's motion for summary judgment.

6) **Control Person Liability.** The Plaintiff has, in fact, pled sufficient facts to support "control person" liability in this case on the part of the SunAmerica defendants.

Defendants first allege Plaintiffs have "failed to adequately plead multiple elements required for 10b and Rule 10b-5 violations including causation and that the alleged acts were committed 'in connection with the purchase or sale of a security.'" (Def. Br. Pg. 13). Defendants have accurately recited the elements for control person liability from *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (the primary case cited in their brief), but additional discussion of *Lustgraaf* helps to illustrate that the current pleading of Plaintiffs adequately state a claim.

In *Lustgraaf*, the court summarized and discussed the pleadings as follows:

> "The complaints specify Behrens's alleged false statements: that he would invest Appellants' funds and provide them with a steady stream of returns. It also alleges facts sufficient to support an inference that those statements were false at the time they were made: rather than investing the funds, Behrens misappropriated them for other uses . . . Finally, the Complaints allege dates on which Appellant's made their investments with Behrens and the amounts of those investments. Thus, the operative complaints articulate the 'who, what, when, where and how' of the alleged misleading statements." *Lustgraaf*, 619 F.3d at 874.

Here, the facts are similar and remarkably simple. Plaintiffs' complaint alleges that Moates informed Plaintiffs that he would use the funds paid by Janes, Inc. to purchase a further interest (make a contribution) in his existing 401(k) account with SunAmerica (Am. Complaint ¶ 11A-C). Contrary to this representation, the funds were diverted to HR Administration, Inc. and/or HR Financial Services, Inc., which were corporations owned and/or operated by Robert Hague-Rogers. (Am. Complaint ¶12). Further, the complaint alleges that Moates and SunAmerica knew that Janes, Inc. desired to maintain his existing accounts with SunAmerica – not to be transferred, or sold without his consent. (Am. Complaint ¶14). The complaint clearly states dates and amounts of the monies contributed by Janes, Inc., in reliance on these statements and agreement. (Am. Complaint

¶¶ 11, 12, 14, 15). Instead of doing what he represented to Janes, Inc., Moates, with the participation of SunAmerica, misdirected the funds, which were ultimately lost. Accordingly, the Amended Complaint sufficiently alleges facts to support that a "primary violater" – Moates, violated the securities laws.

The Defendants next rely upon the exhibits to its Motion to Dismiss, arguing that Plaintiffs resort to "baseless and conclusory allegations that the SunAmerica defendants are broker-dealers, and that Moates is an agent, employee or representative of the SunAmerica defendants. Once again, the *Lustgraaf* case is instructive, as the court discussed control liability as follows:

> "Broker-dealers exercise considerable control over their representatives, both in the sense that their association allows representatives legal access to securities markets, 15 U.S.C. §78o(a)(1),3 and in the sense that the securities laws require broker-dealers to establish oversight systems to monitor representatives' activities, id. §78o(b)(4)(E)(i).4 Thus, although Behrens's fraud did not take place through Sunset, it is Sunset that effectively provided Behrens access to the markets, and Sunset that had the duty to monitor his activities. Behrens could not have perpetrated his fraudulent scheme absent Appellants' belief that he had access to these markets. Sunset had the responsibility to oversee Behrens's activity with respect to his actions as a registered representative."
> *Lustgraaf v. Behrens,* 619 F.3d at 876.

Similarly, in our case, the fraud of Moates in diverting the funds to an unknown, unauthorized third party could not have taken place without the participation and assistance of SunAmerica. As alleged in ¶ 14 of the Amended Complaint: "William J. Moates . . . with the cooperation and assistance of SAAMCo and SunAmerica Capital, caused the entire balance of the funds held by Separate Defendants, SAAMCo and/or SunAmerica Capital, to be withdrawn on or about March 24, 2011, by virtue of a "redemption check" issued by SunAmerica Money Market check #609524, account #9314932, under dealer #1012, in an amount equal to $157,078.30."

SunAmerica was in a position to control and monitor the activities of Moates, and to verify his authority as of the time this check was issued by SunAmerica. SunAmerica was certainly in "control" of the issuance of the "redemption check." It is significant to note that "Congress did not define the meaning of control" in the context of control-person liability. *Lutgraaf*, 619 F.3d at 873, citing H.R. Rep. No. 73-1383 at 26 (1934), ("It was thought undesirable to attempt to define [control]. It would be difficult, if not impossible, to enumerate or anticipate the many ways in which actual control may be exerted) . . ." Importantly, "Culpable participation by the alleged control person in the primary violation is not part of plaintiffs prima facie case." *Id*. 619 F.3d at 873-874. Certainly, under the facts asserted here, the SunAmerica Defendants knew of the transaction, since they issued the redemption check. Was the redemption check issued because of the relationship between SunAmerica and Moates? While the Defendants allege that Moates was not their agent or representative, there are facts that demonstrate otherwise. See the Affidavit of Loren Janes, with the attached statements essentially holding Moates out as a SunAmerica representative.

There are sufficient facts pled to demonstrate that Moates was acting under the apparent authority of SunAmerica, even if the formal relationship had ended. The Eighth Circuit summarized the proof Arkansas requires for a finding of apparent authority, as follows:

> "Two elements must be established to support a showing of apparent authority: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." *Farley v. Henson*, 11 F.3d 827, 832 (8th Cir. 1993), citing *Wal-Mart Stores v. Crist*, 855 F.2d 1326, 1331 (8th Cir. 1988), quoting *Central Surety & Ins. Corp. v. O&S Wholesale*, 193 Ark. 523, 101 S.W.2d 167, 172 (1937).

The *Farley & Henson* case also shows that an entity does not necessarily have to be a "broker-dealer" to have liability under the securities laws. Control-person liability is also created by 15 U.S.C. §77o, which says, in part, that: "<u>any person</u> that knowingly or recklessly provides substantial assistance to another person in violation of a provision of this subchapter, or any rule or regulation issued under this subchapter, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided." See *Farley v. Henson*, 11 F.3d 827, 836 (8th Cir. 1993). Moreover, as explained in *Farley*, the Arkansas Securities Act "tracks federal law," and accordingly, the separate state securities statutes need not be addressed or pled, unless the court so directs or allows. *Id.*, 11 F.3d at 837.

<u>Leave to Amend</u>

8. Plaintiff's disagree with Defendants' assertion that a request for leave to amend would be "futile," and particularly that "Plaintiffs' Amended Complaint is clear proof of Plaintiffs' repeated failure to state a claim."(Def. Br. Pg. 15). Plaintiffs filed their Amended Complaint after the Plaintiffs recognized that the source of the "redemption check" was from Plaintiffs' "SunAmerica" 401(k) account, as opposed to Plaintiffs' annuity account. Plaintiff simply had <u>two</u> accounts with SunAmerica, and the undersigned counsel had inadvertently confused the account numbers at issue. The Amended Complaint was, by no means, an attempt to "remedy" any alleged deficiencies in pleading. With that said, Plaintiffs respectfully request the opportunity to re-plead in the event the court finds deficiencies in the sufficiency of the pleadings.

<u>Proof</u>

9. This partial response is supported by the affidavit of the Plaintiff, Loren Janes, attached as Exhibit A.

Conclusion

10. For the reasons stated herein, the Defendant's motion to dismiss or in the alternative motion for summary judgment must be denied; or alternatively, this Court should enter an order denying Defendant's motion to dismiss and allowing Plaintiff to engage in reasonable discovery to supplement and to fully respond to the Defendant's motion for summary judgment.

WHEREFORE, premises considered, Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied; and, in the event Defendants' motion is considered by the Court to be a Motion for Summary Judgment, that Plaintiffs be given the opportunity to engage in reasonable discovery before being compelled to further respond to this motion, and that an extension of time be granted for discovery; and/or that Defendants' Motion for Summary Judgment be denied; and/or that Plaintiffs be given an opportunity to re-plead in the event the Court finds deficiencies in the Complaint, and for such other and further relief to which Plaintiffs may be entitled to receive.

Respectfully submitted,

JANES, INC. and LOREN JANES, *Plaintiff's*

BYARS, HICKEY & HALL, P.L.L.C.
Attorneys at Law
401 Lexington Avenue
Fort Smith, Arkansas 72901
Tel. 479-494-1800
Fax 479-783-0694
jbyars@cbhlegal.com

By:     */s/ Joe D. Byars, Jr.*
        Joe D. Byars, Jr.
        AR Bar #95107

CERTIFICATE OF SERVICE

      I, Joe D. Byars, Jr., do hereby certify on this 26th day of August, 2013, that a true and correct copy of the above and foregoing Motion was electronically transmitted to the Clerk of the Court using the ECF System for filing. The Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Mr. Troy Price
WRIGHT, LINDSEY & JENNINGS, LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201-3699
tprice@wlj.com

Mr. Gunner DeLay
Attorney at Law
4300 Rogers Avenue, Suite 24
Fort Smith, AR 72903
gunner@delaylaw.net

Thomas F.A. Hetherington
Blair Bruns
EDISON, McDOWELL & HETHERINGTON, LLP
3200 Southwest Freeway, Suite 2100
Houston, TX 77027
tom.hetherington@emhllp.com
blaire.bruns@emhllp.com

                                                    /s/ *Joe D. Byars, Jr.*
                                                      JOE D. BYARS, JR.