IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JANES, INC. and LOREN JANES                                                    PLAINTIFFS

v.                                    Case No. 2:13-CV-02049

WILLIAM J. MOATES; SUNAMERICA ASSET
MANAGEMENT CORP. f/k/a AIG SUN
AMERICA ASSET MGT. CORP.; and
SUNAMERICA CAPITAL SERVICES, INC. f/k/a
AIG SUNAMERICA CAPITAL SERVICES, INC.                                          DEFENDANTS

## OPINION AND ORDER

Currently before the Court is a motion to dismiss (Doc. 31) filed by Defendants SunAmerica Asset Management Corp., f/k/a AIG SunAmerica Asset Management Corp. ("SAAMCo."), and SunAmerica Capital Services, Inc., f/k/a AIG SunAmerica Capital Services, Inc. ("SunAmerica Capital"). Plaintiffs Janes, Inc. and Loren Janes filed a response in opposition (Doc. 39), to which SAAMCo. and SunAmerica Capital (collectively the "SunAmerica Defendants") have replied (Doc. 45). For the reasons set forth herein, the SunAmerica Defendants' motion to dismiss is GRANTED.

**I.    BACKGROUND**

The following facts track the allegations in the complaint[1] and must be accepted as true for purposes of a Rule 12(b)(6) motion. *Public Pension Fund Group v. KV Pharm. Co.*, 679 F.3d 972, 975 (8th Cir. 2012).

Plaintiff Loren Janes is an individual and the registered representative of Plaintiff Janes, Inc., a domestic corporation. Prior to the transactions at issue here, Plaintiffs maintained a 401(k) account with the SunAmerica Defendants under account number 9314932 (the "SunAmerica

---

[1] Unless otherwise indicated, references to the "complaint" refer to the first amended complaint (Doc. 21) filed June 12, 2013.

-1-

account"). Separate Defendant Moates[2] is an individual who, at the time of the dispute, was employed by the National Planning Corporation ("NPC")[3] as a securities sales person or registered representative. *Id.* at ¶¶ 10–11. Plaintiffs also allege that Moates was authorized to act on behalf of the SunAmerica Defendants. Throughout the complaint, SAAMCo. and Defendant SunAmerica Capital are referred to interchangeably. However, there are no allegations as to the nature of any affiliation or relationship between SunAmerica Capital and SAAMCo. Moreover, while Defendant SAAMCo. is alleged to be a corporation doing business in Arkansas as a broker-dealer, there are no allegations as to the nature of SunAmerica Capital's business; in fact, the only specific allegation regarding SunAmerica Capital is that it was formerly known as AIG SunAmerica Capital Services, Inc. *Id.* at ¶ 7.

According to Plaintiffs' complaint, on December 29, 2010, Moates, acting for himself and NPC, personally visited Loren Janes and induced Plaintiffs "to invest in securities which was [sic] issued by SAAMCo. and/or SunAmerica Capital as a 401(k) account and/or mutual fund/money market account, which account had an account number of 9314932." *Id.* at ¶ 11. Plaintiffs further allege Moates induced them to issue a check for $85,600.00 payable to the Janes, Inc. Defined Benefit Plan (the "Plan"), "which Moates described as an additional contribution to the existing account." *Id.* At that time, Moates represented to Plaintiffs that the funds would be held in the SunAmerica account. Contrary to Moates's statement, Defendants transferred the funds to HR Administration, Inc. and/or HR Financial Services, Inc. (collectively "HR Administration"), corporations owned, operated, or otherwise under the control of non-party Robert Hague-Rogers.

---

[2] Moates is not a party to the instant motion to dismiss.

[3] NPC was voluntarily dismissed as a defendant in this action on May 15, 2013.

Plaintiffs further claim that all Defendants knew or should have known that Plaintiffs' investment needs and objectives were to hold the funds in question in the existing account, and such funds were not to be transferred or sold without the express written consent of Plaintiffs. *Id.* at ¶ 14.

Plaintiffs next allege that on March 24, 2011, Moates, with the cooperation and assistance of the SunAmerica Defendants and without Plaintiffs' consent or authorization, caused the balance of funds held in the SunAmerica account, $157,078.30 (the "balance funds"), to be withdrawn and transferred to an account controlled and operated by Mr. Hague-Rogers (the "Hague-Rogers account").[4] According to Plaintiffs, the SunAmerica Defendants permitted and facilitated the unauthorized transfer of the proceeds[5] of the SunAmerica account. When Loren Janes attempted to retrieve the funds in July or August of 2012, he was informed that substantially all of the proceeds of the account had been lost or were missing. Mr. Janes was subsequently advised that Mr. Hague-Rogers defrauded various investors, and Loren Janes was identified as a victim of such fraud.

Plaintiffs filed a complaint in this Court, alleging claims of federal and state securities fraud, negligence, conversion, and respondeat superior. The Court's jurisdiction over this matter is based on § 27 of the Securities Exchange Act of 1934 ("SEA"), which gives federal courts exclusive jurisdiction over claims arising out of the SEA and its implementing rules and regulations. Plaintiffs assert claims against the SunAmerica Defendants under §§ 10(b) and 20 of the SEA, and SEC Rule 10b-5.[6] The SunAmerica Defendants now move to dismiss Plaintiffs' complaint on grounds that

---

[4] It is unclear whether the balance funds were transferred to the same entity and/or account as the contribution funds.

[5] It appears that Plaintiffs are referring to the withdrawal of the balance funds when they refer to the "transfer of the proceeds of the account." (Doc. 21, ¶ 16).

[6] Plaintiffs also attempt to assert some type of claim regarding a violation of SEA rules on the basis of alleged Financial Industry Regulatory Authority ("FINRA") rule violations, but the

Plaintiffs cannot satisfy the elements of their federal securities fraud claims or their state-law claims, and because Plaintiffs failed to plead their fraud claims with sufficient particularity.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

The Court's inquiry in reviewing the sufficiency of a complaint is necessarily limited, because "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the complaint, the Court must assume the truth of the factual allegations and draw all reasonable inferences in favor of the plaintiff. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). However, legal conclusions couched as factual allegations are not entitled to the same presumption of truth, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the Court concludes that the pleadings do not, as a matter of law, set forth facts sufficient to state a claim upon which relief may be granted, the Court should grant the defendant's motion to dismiss." *In re Staffmark, Inc. Sec. Litig.*, 123 F. Supp. 2d 1160, 1163 (E.D. Ark. 2000).

---

Court cannot readily discern a cognizable cause of action for securities fraud based on FINRA violations in the allegations contained in the complaint. However, assuming Plaintiffs do allege a cognizable claim based on FINRA violations, any such claim is subject to dismissal due to Plaintiffs' general failure to allege sufficient facts to state a claim for securities fraud.

**B.     Materials to be Considered**

In support of their motion, the SunAmerica Defendants submitted two exhibits: a Financial Industry Regulatory Authority ("FINRA") broker check report (Doc. 32-1) and an Arkansas Department of Insurance producer license report (Doc. 32-2). Plaintiffs object to the exhibits, arguing that the Court should exclude the documents from consideration because they are unauthenticated hearsay, and if the documents are considered, the Court must convert the motion to dismiss into a motion for summary judgment and provide Plaintiffs with a reasonable period of time to conduct discovery.[7]

The Court will exclude the SunAmerica Defendants' supporting documentation from consideration and declines to take judicial notice of the contents of the documents. While some matters of public record may be appropriate to take into consideration at this stage of the proceedings, it is not the mere fact that a document is a public record that makes it so; it is the fact that the information is otherwise an appropriate subject of judicial notice. *See Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986) (noting that a court may take judicial notice of matters in the public record when reviewing a complaint on a motion to dismiss under Rule 12(b)). "Judicial notice of

---

[7] The Court rejects Plaintiffs' proposition that it must either exclude the documents or treat the motion as one for summary judgment. "In this circuit, Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion." *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999); *see also Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011) (courts are not strictly limited to the four corners of the complaint when ruling on a motion to dismiss for failure to state a claim); *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) ("While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment.") (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

a fact is only to be taken when that fact is not subject to reasonable dispute." *Lustgraaf*, 619 F.3d at 885 (citing Fed. R. Evid. 201(b)(2)). The exhibits are offered here to show that Moates was never a registered representative or licensed producer for the SunAmerica Defendants, and that Moates was no longer affiliated with any broker at the time the alleged misrepresentations were made. (Doc. 32, p. 4). Not only do these propositions contradict the complaint, but Plaintiffs argue in their response that Moates was an agent of the SunAmerica Defendants. This subjects the issue of Moates's relationship or affiliation with the SunAmerica Defendants to reasonable dispute. As such, it would be inappropriate for the Court to consider these documents in ruling on the instant motion to dismiss, even though they are matters of public record. *See Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 830, 832 (8th Cir. 2003) (declining to consider a document offered to prove the truth of the matters asserted therein, where such matters were in dispute, and noting courts may consider SEC filings where the documents were required by law to be filed with the SEC and were not offered to prove the truth of the documents' contents); *cf. Little Gem Life Scis. LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008) (holding that district court did not err in considering SEC filings to obtain background facts, where such facts did not contradict the complaint and were not critical to the outcome of the motion to dismiss); *Brodkorb v. Minnesota*, 2013 U.S. Dist. LEXIS 19416, at *10 (D. Minn. Feb. 13, 2013) (agreeing to consider certain matters of public record that provided relevant background information and did not contradict the complaint).

The SunAmerica Defendants also ask the Court to take judicial notice of the fact that SAAMCo. is not now, nor has it ever been, a registered broker-dealer or member of FINRA.[8] The

---

[8] No documentary evidence is offered in support of this proposition. Instead, the SunAmerica Defendants contend this fact "can be confirmed by searching the company name through the FINRA broker check search tool located at http://brokercheck.finra.org/Search/Search.aspx." (Doc. 32, n.3).

Court declines to take judicial notice of this fact, as the matter is disputed by Plaintiffs and therefore judicial notice is not appropriate.

## III.   DISCUSSION

After a thorough review of the complaint, the Court has two initial observations. First, Plaintiffs' allegations are largely conclusory statements that mirror the language of the applicable statutory and regulatory provisions. As mentioned above, such statements are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Second, the complaint sets out its allegations in a rambling format, and Plaintiffs' multiple claims for relief are lumped together without any distinction. The lack of any coherent organization makes effective review difficult. The preferred manner of pleading is to set out the various claims for relief in separate counts. *See* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count.").

### A.   Federal Securities Fraud Claims

Plaintiffs allege that all Defendants violated the anti-fraud provisions of § 10(b) of the SEA and SEC Rule 10b-5. Section 10(b) prohibits the use of "any manipulative or deceptive device or contrivance in contravention of [SEC rules and regulations]" in connection with the purchase or sale of any security. 15 U.S.C. § 78j. To state a cognizable claim for fraud under § 10(b), a private plaintiff must allege conduct by the defendant that is "manipulative or deceptive" within the meaning of the statute. "[I]n situations not involving a manipulative scheme, the conduct alleged as fraudulent must include deception, misrepresentation, or nondisclosure to violate § 10(b) or Rule 10b-5. *Pross v. Baird, Patrick & Co.*, 585 F. Supp. 1456, 1458–59 (S.D. N.Y. 1984). Pursuant to § 10(b), the SEC promulgated Rule 10b-5, which enumerates three types of prohibited conduct. Rule 10b-5 "makes it unlawful for any person, in connection with the purchase or sale of any

security, to (a) employ any device, scheme or artifice to defraud, (b) make an untrue statement of material fact or omit material facts from a statement, or (c) engage in a fraudulent or deceptive course of business." *Siepel v. Bank of America, N.A.*, 526 F.3d 1122, 1125 (8th Cir. 2008) (citing 17 C.F.R. § 240.10b-5). Plaintiffs further allege that the SunAmerica Defendants violated § 20 of the SEA, which extends liability for conduct prohibited by § 10(b) and Rule 10b-5 to any "controlling person." *Kushner*, 317 F.3d at 826.

"To prevail, a § 10(b)/Rule 10b–5 claimant ordinarily must show '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials*, 641 F.3d 1023, 1028 (8th Cir. 2011) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 158 (2008)). The SunAmerica Defendants challenge the sufficiency of Plaintiffs' federal securities fraud claims in three respects. First, they contend that Plaintiffs failed to plead sufficient facts to allege "transaction causation," which relates to the element of reliance in the securities fraud context. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (noting that in the securities fraud context, the element of reliance is often referred to as "transaction causation"). Second, they argue Plaintiffs failed to allege that any fraudulent conduct was in connection with the purchase or sale of a security. Third, they assert generally that Plaintiffs failed to plead their SEA claims with sufficient particularity to meet the heightened pleading standard of Rule 9(b).

### 1. Liability under § 10(b)

The SunAmerica Defendants' first argument is that Plaintiff failed to adequately plead "transaction causation," or reliance. In a private cause of action under § 10(b), the plaintiff must

plead and prove reliance upon a defendant's deceptive acts to ensure that there is a proper connection between the defendant's misrepresentation and the plaintiff's injury. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184–85 (2011); *see also Stoneridge*, 552 U.S. at 159 ("Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action. It ensures that, for liability to arise, the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury exists as a predicate for liability.") (quotation omitted). "The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of [a defendant's] statement and engaged in a relevant transaction . . . based on that specific misrepresentation." *Erica P. John Fund*, 131 S. Ct. at 2184–85. A defendant who does not make a specific oral or written statement, but otherwise engages in a course of conduct that is deceptive, may be subject to liability under § 10(b) or Rule 10b-5 if the plaintiff relied upon the defendant's deceptive acts. *Stoneridge*, 552 U.S. at 158–159.

Plaintiffs allege that the SunAmerica Defendants engaged in deceptive conduct by helping Moates make unauthorized transfers out of Plaintiffs' SunAmerica account. The complaint mentions two unauthorized transfers: the transfer of $85,600.00 to HR Administration, and the withdrawal of the balance funds and transfer to the Hague-Rogers account. A "relevant transaction" is the purchase or sale of a security. The only allegation that could be construed as Plaintiffs—or anyone else— engaging in the purchase or sale of a security is the allegation that they provided Moates with a check for $85,600.00. Because the unauthorized transfers occurred after the alleged securities purchase, Plaintiffs cannot show that they engaged in any relevant transactions based on any deceptive conduct attributable to the SunAmerica Defendants. Furthermore, Plaintiffs do not allege that the SunAmerica Defendants made any misstatements or omissions, and they cannot be directly

liable for any of Moates's misstatements or omissions.[9] Under these circumstances, Plaintiffs cannot show that they relied upon any of the SunAmerica Defendants' deceptive acts in the decision to purchase or sell securities. Therefore, Plaintiffs cannot establish the element of reliance as to SAAMCo. or SunAmerica Capital. The Court finds that Plaintiffs failed to state a claim for relief against the SunAmerica Defendants under § 10(b) or Rule 10b-5.

### 2. Control Person Liability under § 20

Plaintiffs also bring claims against the Sunamerica Defendants as "control persons" under § 20 of the SEA. Section 20 creates joint and several liability for persons who control the activities of a person who violates the SEA. 15 U.S.C. § 78t. A claim based on liability as a "control person" under § 20 is a derivative claim, so there must first be a primary violation under § 10(b). *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 961 (8th Cir. 2008); *see also Lustgraaf*, 619 F.3d at 874 ("[A]bsent a primary violation, a claim for control-person liability must fail."). Although Plaintiffs failed to allege a claim that the SunAmerica Defendants are primarily liable, they may be subject to secondary liability if Plaintiffs state a claim against Moates under § 10(b). The SunAmerica Defendants argue that Plaintiffs failed to plead a primary violation by a controlled person, and they also contest Moates's status as a person subject to their control. As such, the Court must address the sufficiency of Plaintiffs' claims against Moates, even though he is not a party to the instant motion.

#### a. "Transaction Causation" or Reliance

The allegations against Moates, like those against the SunAmerica Defendants, allege he

---

[9] "Section 10(b) . . . imposes liability only on a person who makes a material misstatement or omission, not on a person who aids in making the misstatement or omission." *McAdams v. McCord*, 584 F.3d 1111, 1114 (8th Cir. 2011).

engaged in deceptive conduct by making unauthorized transfers. For the same reasons Plaintiffs failed to state a claim based on unauthorized transfers against the SunAmerica Defendants, Plaintiffs failed to state a claim based on unauthorized transfers against Moates. However, the complaint also alleges Moates engaged in other deceptive conduct. Specifically, Plaintiffs allege Moates falsely represented to Plaintiffs that the $85,600.00 would be held in the SunAmerica account, and he failed to tell them that the funds would be transferred to HR Administrators.

The Court finds that Plaintiffs failed to allege any reliance on Moates's statement and/or omission. Plaintiffs allege that Moates's statement was made in person to Mr. Janes at the time of the relevant transaction, so Plaintiffs were clearly aware of Moates's representation that the $85,600.00 would be held in the SunAmerica account. However, Plaintiffs do not allege that they purchased or sold a security based on that specific representation. Even if Plaintiffs had alleged that they purchased a security based on Moates's statement, Plaintiffs otherwise failed to state a claim against Moates under § 10b or Rule 10b-5, as discussed below. Accordingly, allowing Plaintiffs leave to amend to allege reliance would be futile.

### b. Fraud in Connection with the Purchase or Sale of a Security

The SunAmerica Defendants challenge Plaintiffs' allegations by denying that the SunAmerica account is a "security" under the SEA and arguing that Plaintiffs have only alleged an *attempt* to purchase a security, which is not covered under § 10(b). They further argue that Plaintiffs failed to plead sufficient facts that the alleged fraudulent conduct was "in connection with" the purchase or sale of a security.

Plaintiffs' complaint only alleges a purchase, not a sale. Under the SEA, "[t]he terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire." 15 U.S.C. § 78c(a)(13). The only potential purchase is Plaintiffs' additional contribution to the Plan. The

-11-

complaint refers to other transactions involving transfers of funds between various accounts, but moving funds from one account to another is not a purchase, and there are no allegations that any securities were bought, sold, or otherwise traded as a part of these transfers. While the Court must construe the complaint liberally in Plaintiffs' favor, the Court cannot discern facts where none are alleged.

According to the complaint, the alleged fraud involved the purchase or sale of a security because Moates induced Plaintiffs "to invest in securities which was [sic] issued by SAAMCo. and/or SunAmerica Capital as a 401(k) and/or mutual fund/money market account." (Doc. 21, ¶ 11). Plaintiffs do no allege that the SunAmerica account contains assets that are securities; instead, they argue that the account itself is a security.[10] The Court agrees with the SunAmerica Defendants that the SunAmerica account, itself, is not within the definition of a "security" under the SEA.[11]

---

[10] Plaintiffs argue that a 401(k) account is within the SEA's definition of a "security" as a "group or index of securities."  (Doc. 39, p. 12, citing 15 U.S.C. § 78(c)(a)(10)).

[11] The SEA defines a "security" as follows:

> The term "security" means any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(a)(10).

Plaintiffs make two arguments regarding the alleged purchase of a security. First, they maintain that the relevant transaction was more than a mere attempted purchase because "Moates did represent to Plaintiff, Janes, Inc., that a contribution to the existing security account issued by SunAmerica would be purchased and a different security was purchased instead." (Doc. 39, p. 10) (emphasis in original). As argued and as alleged, Plaintiffs made an additional contribution to the Plan. There are no allegations that the contribution funds were used to acquire a security. Second, Plaintiffs contend that "it is alleged that Moates . . . sold to Janes, Inc. an 'option' to purchase a further interest in the existing account, but had the secret intention to misdirect the funds, and not honor the 'option'." (Doc. 39, pp. 10–11). This argument misconstrues the meaning of an "option" and lacks any support from the allegations. There is no indication that Moates sold Plaintiffs an option. Furthermore, the complaint is devoid of any allegations regarding Moates's intent.[12]

In order to conclude that Plaintiffs state a claim under § 10b, the Court must not only infer that an "additional contribution" to a pre-existing retirement plan qualifies as the purchase of a security, but also conclude that Moates engaged in deceptive conduct in connection with this purchase. Assuming *arguendo* that Plaintiffs purchased a security, the critical question becomes whether the alleged misrepresentation and omission were "in connection with" that purchase.

While the "in connection with" requirement is construed broadly by the SEC, it is given a more narrow construction in private Rule 10b-5 actions. *Siepel v. Bank of Am., N.A.*, 526 F.3d 1122, 1126 (8th Cir. 2002). As mentioned above, Plaintiffs have not alleged any form of reliance on Moates's statement and/or omission in their decision to purchase a security. The statement and its corresponding omission relate to the ultimate disposition of funds, not to the nature of the security

---

[12] The lack of allegations as to scienter are addressed in more depth below in the discussion of Plaintiffs' failure to plead with the requisite particularity.

or its value. The Court cannot find that Plaintiffs have alleged the requisite connection between the alleged fraud and the purchase.

Even when construing the complaint in Plaintiffs' favor, the Court cannot conclude that Plaintiffs have sufficiently alleged any fraudulent conduct in connection with the purchase or sale of a security within the meaning of § 10(b). Although Moates did not file a motion to dismiss, the Court will *sua sponte* dismiss the § 10(b) claim against Moates for failure to state a claim. *See Smith v. Boyd*, 945 F.2d 1041, 1042 (8th Cir. 1991) (holding that "a district court *sua sponte* may dismiss a complaint under Rule 12(b)(6) as long as the dismissal does not precede service of process").

Since the Court has dismissed Plaintiffs' § 10(b) claims against all Defendants, there is no predicate offense upon which control person liability can be based. Therefore, Plaintiffs' claims under § 20 must also be dismissed.

### 3. Failure to Allege Fraud with Particularity

The SunAmerica Defendants argue Plaintiffs' complaint fails to meet the heightened pleading requirements of Federal Rule of Procedure 9(b). Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). However, to satisfy the pleading requirements for their SEA claim, Plaintiffs' complaint must not only meet the standard of Rule 9(b), it must also satisfy the special pleading requirements for securities fraud claims adopted by Congress under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b).

Under the PSLRA, the complaint must identify "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). "The circumstances of the fraud

-14-

must be stated with particularity, including such matters as the time, place and contents of false representations, . . . [t]his means the who, what, when, where, and how." *Public Pension*, 679 F.3d at 980 (internal quotations and citations omitted). It is not enough to allege that fraud has occurred; rather, to meet the PSLRA's falsity requirement, "a complaint must not only indicate that false statements were made, but must [also] indicate why the alleged misstatements were false when made." *Lustgraaf*, 619 F.3d at 874. Also, "the complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "[A]n inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

The heightened pleading standards of the PSLRA require a modified analysis of a motion to dismiss under 12(b)(6). Although the Court must continue to assume the truth of all factual allegations, the Court must "disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements of the [PSLRA]." *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir. 2001). Also, while Plaintiffs are still entitled to all reasonable inferences that may be drawn from the allegations in the complaint, the PSLRA requires the Court to also consider plausible opposing inferences. *Tellabs*, 551 U.S. at 314 ("[T]o determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court . . . must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged.").

The Court finds that Plaintiffs failed to meet the heightened pleading requirements of either Rule 9(b) or the PSLRA. The circumstances surrounding the fraud are not alleged with sufficient particularity, and the complaint lacks any allegation of scienter. As such, the Court will grant the

SunAmerica Defendants' motion on the alternative grounds that it fails to meet the pleading requirements of Rule 9(b) and the PSLRA.

### B. State Law Claims

Plaintiffs have asserted several state law claims against all Defendants, including violation of state securities laws and common law claims of negligence, conversion, and respondeat superior. The SunAmerica Defendants move the Court to dismiss each of these claims under Rule 12(b)(6) for failure to state a claim. Since the Court's jurisdiction is based on § 27 of the SEA and the Court has dismissed all of Plaintiffs' SEA claims, the Court now declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it has original jurisdiction).

### C. Leave to Amend

"Although leave to amend should ordinarily be granted, a party should at least show how the complaint could be amended to save a meritless claim." *Siepel*, 526 F.3d at 1127–28. Plaintiffs assert that they should be given leave to amend their complaint; however, they have not shown how the complaint could be amended to cure the aforementioned defects. Accordingly, Plaintiffs' request for leave to amend is denied as futile.

### IV. CONCLUSION

The complaint fails to allege sufficient facts to plausibly state a claim against the SunAmerica Defendants or Moates under § 10(b), § 20, or Rule 10b-5 for securities fraud, and also fails to allege fraud with the requisite particularity. Also, Plaintiffs did not establish how their complaint could be amended to cure any pleading defects, and therefore allowing leave to amend the complaint would be futile.

For the reasons set forth above, IT IS HEREBY ORDERED that the SunAmerica Defendants' motion to dismiss (Doc. 31) is GRANTED, and Plaintiffs' federal securities law claims against all Defendants are DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

IT IS FURTHER ORDERED that because Plaintiffs' federal claims forming the basis for this Court's jurisdiction have been dismissed without prejudice, Plaintiffs' remaining state law claims for negligence, conversion, respondeat superior, and violation of state securities laws are DISMISSED WITHOUT PREJUDICE, as the Court declines to exercise supplemental jurisdiction over these claims.

IT IS FURTHER ORDERED that this case is DISMISSED WITHOUT PREJUDICE. Judgment will be entered accordingly.

IT IS FURTHER ORDERED that all other pending motions in this action are DENIED AS MOOT.

IT IS SO ORDERED this 31st day of January, 2014.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE